Rockingham, )
Jan. 2, 1912. )

Hub Construction Co. & a.  *v.*  New England Breeders' Club & a.

The exhibition of a certified check by the treasurer of a corporation, accompanied by his statement that the capital had been paid thereby, does not constitute a payment of the capital within the meaning of section 8, chapter 150, Public Statutes.

A stockholder is not individually liable for the debts and contracts of a corporation under section 8, chapter 150, Public Statutes, after the capital is fully paid and a certificate of that fact is duly recorded, without regard to the truth of the certificate at the time it was made.

A stockholder is not individually liable for work done for the corporation after the capital was fully paid in, in performance of a contract entered into before such payment was made.

Bill in Equity, brought by creditors of the New England Breeders' Club to enforce the individual liability of its stockholders.  The bill was filed December 17, 1908, by the Hub Construction Company and the Boston & Maine Railroad; and in October and November, 1909, the town of Salem and the American Bank Note Company were joined as plaintiffs.  The defendants are the Breeders' Club and certain stockholders in that corporation.

The Breeders' Club was incorporated by an act of the legislature. Laws 1905, c. 232.  At the first meeting of the corporation, held July 20, 1905, the capital stock was fixed at $500,000, Andrew Miller and two others were elected directors, and William H. Bissett was chosen treasurer.  When the directors met on July 31, Bissett showed them a certified check for $500,000 and told them the whole capital had been paid in, whereupon they made a certif-

icate of that fact and caused it to be properly recorded. Bissett and Miller knew that the money did ·not belong to the club and that it was to be returned to its owners after the certificate was made. The contracts of the club under which the work of the railroad and the Hub Construction Company was done were made prior to May 8, 1906, and the contract with the American Bank Note Company was made after that date. It did not appear when the contract with the town of Salem was made.

The court (*Pike*, J.) found that the entire capital had been paid in on May 8, 1906; and the question whether the individual liability of the defendant stockholders ceased on that date was transferred without a ruling from the January term, 1911, of the superior court.

*Thomas G. Frost* (of New York), *Taggart, Tuttle, Burroughs & Wyman, Burnham, Brown, Jones & Warren, Kelley, Harding & Hatch,* and *Page, Bartlett & Mitchell* (*Mr. Frost* orally), for the plaintiffs.

*Remick & Hollis* (*Mr. Hollis* orally), for the defendants.

YOUNG, J. 1. The capital was not paid in by Bissett telling the directors it had been and showing them $500,000 which he said belonged to the club; for the test to decide that question is to inquire whether what happened at the directors' meeting was such a paying in of the capital as section 8, chapter 150, Public Statutes, contemplates (*Pine River Bank* v. *Hodsdon*, 46 N. H. 114, 116), and not whether the club could have recovered the money from those to whom it was returned.

2. The plaintiffs contend that the defendants are liable for the work the plaintiffs did for the club after May 8, notwithstanding the court's finding. In other words, they contend that when the capital has been paid in, the test of the stockholders' liability is to inquire whether the certificate was true when it was made—not whether one has been made and recorded. The validity of this contention depends on the intention of the legislature in enacting that "stockholders . . . shall be liable . . . until the . . . capital . . . shall have been paid in and a certificate thereof . . . has been filed and recorded . . . and not afterward." P. S., *c.* 150, *s.* 8.

If this language is given its ordinary meaning, the individual liability of a stockholder ceases when the capital is paid in if there

is a certificate of that fact recorded in the proper places, without regard to the truth of the certificate at the time it was made. *White Corbin & Co.* v. *Jones,* 167 N. Y. 168. The fact that the officers are required to make the certificate to protect the stockholders of the corporation (*Stedman* v. *Eveleth,* 6 Met. 114, 121) strengthens this conclusion. It is improbable that the legislature would punish the stockholders for the officers' failure to perform a duty imposed on them for the benefit of the stockholders; and either that was its intention, or it intended that the liability of stockholders should cease when the capital is paid in if there is a certificate on file in the proper offices. In other words, the improbability that the legislature intended to punish the stockholders for the officers' misconduct makes it probable that it intended the defendants' liability for the contracts of the corporation should cease on May 8, 1906. The provisions of section 19, chapter 150, Public Statutes, strengthen this conclusion. That section provides that if the officers make a false certificate, they shall be individually liable for all debts of the corporation contracted while they are in office. If the legislature had intended to hold the stockholders as well as the officers in such cases, it is fair to assume that equally apt words would have been used to express such intention.

There is nothing to rebut the presumption that the defendants' liability ceased on May 8, 1906. If stockholders are liable when the capital has not been paid in, though a certificate has been made and recorded, it does not help the plaintiffs; for in such a case the stockholders have failed to perform their duty of paying in the whole of the capital, and their liability is because of their failure to perform a duty imposed on them for the creditors' benefit and not because of the officers' failure to perform a duty imposed on them for the stockholders' benefit.

The limited partnership cases on which the plaintiffs rely are not in point. The certificate required in such cases is intended to protect those who make it from liability. Consequently, holding them liable when the certificate is false is merely charging them with the consequences of their own misconduct. Neither is there any merit in the plaintiffs' contention that stockholders are liable because the officers who make the certificate are their agents. The duty of making the certificate is not imposed on the officers by the stockholders, but by statute. Consequently, they are not acting for the stockholders when they make the certificate.

3. The question as to when the liability of stockholders attaches

for work done in performance of a contract remains to be considered. The determination of this question depends on the intention of the legislature in providing that "stockholders . . . shall be liable for . . . contracts of the corporation until," etc. P. S., c. 150, s. 8. The history of chapter 150 tends to prove that "contracts" is used in that chapter in the sense of contractual liabilities; for when it was first enacted, stockholders were to be held for all "debts and civil liabilities" of the corporation. Laws 1846, c. 321, s. 2. Although "civil liabilities" was changed to "contracts" when this section was re-enacted in 1867 (G. S., c. 135, s. 1), the purpose of the legislature in making the change seems to have been to exclude the torts of the corporation from the liabilities for which the stockholders could be held. Consequently, section 8, chapter 150, Public Statutes, should be construed as though it read: shall be liable for all debts and contractual liabilities of the corporation until, etc.

If the plaintiffs were seeking to recover damages for the club's refusal to permit them to complete their contracts, there would be force in the contention that their claims accrued when the contracts were made. They are not, however, seeking to recover such damages, but pay for work they did in performing their contracts. It is clear they cannot recover for that by proving their contracts and showing that they call for the work; they must go further and show that work has been done, before any liability on the part of the corporation to pay for the work attaches. In other words, the liability of a corporation for work done in the performance of an executory contract does not attach at the time the contract is made, but when and as the work is done. As the liability the statute imposes on stockholders is that of guaranteeing the performance of all the contractual liabilities of the corporation until the whole of the capital has been paid in, their liability in a case of this kind attaches when and as the corporate liability accrues, even though at that time no action could be maintained against the corporation. *Chesley* v. *Pierce*, 32 N. H. 388, 403; *Flather* v. *Company*, 71 N. H. 398; *White* v. *Green*, 105 Ia. 176. The test, therefore, to determine whether the plaintiffs or any one of them can recover is to inquire whether they did any work for the club on or before May 8, 1906, which has not been paid for.

*Case discharged.*

All concurred.